{¶ 1} I respectfully dissent from the majority's opinion for the reason that I believe the Crnariches presented enough evidence to defeat United Foundry's motion for summary judgment on their claim for intentional tort. More specifically, I believe genuine issues of material fact remain concerning the second element of the Crnariches' intentional tort claim. The Crnariches presented evidence which, when viewed in a light most favorable to them, left in my mind a genuine issue of material fact regarding UF's knowledge that the conditions under which Richard was required to work with the Velvalite would, with a substantial certainty, lead to harm to him. The Crnariches' evidence included numerous depositions taken of employees and key management at UF as well as comprehensive expert affidavits and reports detailing industry standards and illustrating where UF went wrong.
 {¶ 2} UF management was well aware of the dangers surrounding the use of Velvalite. Velvalite is extremely flammable with a flash point of only fifty-three degrees Fahrenheit. Due to its highly flammable composition, contact with even a single spark could ignite it. The vapor emitted by Velvalite is equally as flammable and particularly dangerous since the vapors are heavier than air and will travel along the ground until they reach an ignition source. Because of these dangerous propensities, industry standards call for Velvalite to be contained, handled, and transported in covered metal safety containers. The safety containers eliminate the potential for ignition and the high risk associated with evaporation and spillage. Rather than employ the safety containers, UF required the use of open plastic containers, which allowed for spillage and created a potential ignition source by allowing the buildup of static charge.
 {¶ 3} Just as important as how Velvalite is contained and handled is the environment in which it is used. Evidence of industry standards put forth by the Crnariches establishes that Velvalite is to be used in well ventilated areas free of possible sources of ignition. Disregarding the known dangers, two and half weeks before Richard's injuries, UF moved the swabbing operation to the shakeout area in the center of the foundry where there were numerous sources of ignition. This area contained open pits where molten metal was being poured and where "extensions" were being regularly "lit off." Adding to the danger was the fact that there was no ventilation in the shakeout area.
 {¶ 4} In sum, I believe that the Crnariches presented ample evidence to establish that through a series of deliberate decisions made by UF, it produced a situation which was substantially certain to cause injury to Richard. Thus, I believe there is a genuine issue of material fact regarding UF's knowledge that there was substantial certainty that harm would result.